UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07CV-55-R

ARCHIE LEE PACE                                                                    PLAINTIFF

v.

DYNCORP INTERNATIONAL, LLC                                          DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket #9).  Plaintiff did not file a response and the time for such filings has passed.  This matter is now ripe for adjudication.  For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

Plaintiff, a black male, was employed by Defendant as an Aircraft Mechanic and worked in the Trouble Shooting Assistance Group ("TAG") program at Fort Campbell, Kentucky, from October 1, 2002 until December 10, 2004.  From October 1, 2002, until August 25, 2003, Plaintiff earned $18.29 per hour.  His pay was increased on August 25, 2003 to $20.46 per hour.  On October 1, 2003, Plaintiff's pay was increased to $22.04 per hour.  Plaintiff was awarded a promotion to an Electronics Tech Maintenance III ("MEIII") opening in the Rotary Wing Command Console ("RWCC") program on December 10, 2004, with a pay increase to $24.34 per hour.[1]

On August 26, 2005, five employees from the Special Repair Activity ("SRA") group,

_____

[1] Plaintiff had submitted an application for the position and was awarded the position following an appearance before the promotion board.

working with the TAG team, were reclassified from a MEIII position to the position of Engineer Tech V ("E5"), earning $26.00 per hour. All of the reclassified employees are white. The reclassification was prospective and did not involve any back pay. The SRA group received a reclassification because some of their work troubleshooting involved working with the E5 engineers on the TAG team. Plaintiff was not a member of the SRA program. Plaintiff did not receive a reclassification.

On September 12, 2005, Pace asked Edward Franklin Miles, his supervisor, about the reclassification. Miles explained to Pace that only the members of the SRA unit that were assisting the TAG team program were eligible. Defendant is not authorized to hire E5s from the RWCC program, with which Plaintiff was now working. Miles explained to Plaintiff that there were no current openings on the TAG team program, but that he could apply for any available openings in the TAG team for future assignment.

On October 26, 2005, Plaintiff filed a formal complaint with the Equal Employment Opportunity ("EEO") office.

On October 28, 2005, the five SRA employees assisting the TAG team program were reclassified back to their original positions. The SRA program was changed after the reclassification to allow E5 pay to SRA members while performing E5 work with TAG team members on a particular part of a project that qualifies as E5 work. It is no longer a permanent pay classification, it now fluctuates.

On August 25, 2006, Plaintiff applied for an opening back on the TAG team program and was selected by the promotion board to the position of E5 and assigned back on the TAG team. Plaintiff's position with the RWCC was eliminated as Defendant lost its contract position on that

project.  On September 14, 2006, Plaintiff's security clearance was revoked by the Defense Industrial Security Clearance Office as a result of an arrest.  Plaintiff was ineligible to work at any program in the Special Operations aircraft maintenance section of Fort Campbell as a security clearance is required.  Although the common practice was to terminate an employee who had lost their security clearance, Plaintiff was moved to another section of Fort Campbell where Defendant performs work that is not classified.  Plaintiff received pay at the Aircraft Mechanic I pay rate of $26.03 per hour.

If Plaintiff reacquires a security clearance he will be eligible for re-assignment to the TAG team, assuming that there are openings on the TAG team.[2]  On October 12, 2007, Plaintiff gave notice that he intended to voluntarily terminate his employment for another position elsewhere due to the reduction in pay following the revocation of his security clearance.  He indicated that his last day of work would be October 25, 2007.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."

---

[2]  At the time the motion was filed, there were no available openings on the TAG team as all positions were filled.

*Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

## I.   UNLAWFUL DISCRIMINATION

All civil rights claims are analyzed under the standard set by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 230 (Ky. 1984).  Under the *McDonnell Douglas* standard, the Plaintiff must first establish a *prima facie* case of discrimination by showing: (1) that he belongs to the statutory protected class; (2) he performed his job satisfactorily (was otherwise qualified for the position); (3) he was subject to an adverse employment decision; and (4) the adverse decision resulted in a similarly situated person outside of the protected class being treated more favorably.[3]  *McDonnell Douglas*, 411 U.S. at 802-805.

If the plaintiff can meet this initial hurdle, the burden then shifts to the employer who must

---

[3] Defendant does not dispute that Plaintiff belongs to a statutory protected class.

4

then state with clarity their legitimate reason for the adverse decision. *Id.* at 802.  If the employer

offers a legitimate reason, then the burden shifts back to the plaintiff who must show that he is the

victim of intentional discrimination and that the employer's reasons were pretextual.  *Id.* at 804.

Although the burden of proof may be on the plaintiff to meet this final standard, in a civil rights

case, the plaintiff "must be given a full and fair opportunity to demonstrate by competent evidence

that the presumptively valid reasons for his rejection were in fact a coverup for a . . . discriminatory

decision. *Id.* at 805.

Defendant argues that Plaintiff has failed to establish a *prima facie* case of employment

discrimination as he cannot show that he was subjected to an adverse employment action.

Defendant states that there is no proof that Plaintiff was entitled to the raise given to other MEIIIs

that were members of the SRA program working with the TAG team program.  Defendant states that

as Plaintiff personally sought the promotion to a different program, it cannot be considered an

adverse employment action.  Defendant argues that even if Plaintiff can establish a *prima facie* case

of discrimination, Defendant has shown a legitimate non-discriminatory reason for the pay changes.

The Sixth Circuit has defined an adverse employment action as a "materially adverse change

in the terms and conditions of plaintiff's employment."  *EEOC v. Sundance Rehab. Corp.*, 466 F.3d

490, 501 (6th Cir. 2006) (internal quotation omitted).  "Examples of adverse employment actions

include firing, failure to promote, reassignment with significantly lower responsibilities, a material

loss of benefits, suspensions, and other indices unique to a particular situation." *Id.* (quoting *Smith

v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004)).  This Court looks to whether a particular

employment action was "objectively intolerable to a reasonable person," rather than an individual's

subjective impressions, in order to determine whether an employment action was materially adverse.

*Policastro v. NW. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). "In short, the action must have a 'significant detrimental effect' on the employee's status as evidenced by objective factors, not subjective impressions." *Freeman v. Potter*, 200 Fed. Appx. 439, 442-43 (6th Cir. 2006) (internal quotation omitted). Importantly, this standard filters out claims establishing merely a "bruised ego" or a "mere inconvenience." *White v. Burlington N. & Sante Fe Ry.*, 364 F.3d 789, 802 (6th Cir. 2004) (en banc).

Plaintiff has failed to show an adverse employment action. Plaintiff received the promotion for which he applied, that of MEIII in the RWCC program. There is no evidence that he was coerced to do so, or that Defendant initiated the transfer in any way. Plaintiff received a pay increase of $2.30 per hour with the promotion. Nine months later, five employees from the SRA group working with the TAG team were reclassified from a MEII position to E5, earning $26.00 per hour. These employees were reclassified to their original positions two months later, receiving their original pay. Defendant was not authorized by contract to hire E5s from the RWCC program. On August 25, 2006, Plaintiff applied for an opening back on the TAG team program and was selected by the promotion board to the position of E5 and assigned back on the TAG team. The evidence indicates that Plaintiff was awarded every promotion for which he applied. This Court cannot find that these employment actions were "objectively intolerable to a reasonable person." *See Policastro*, 297 F.3d at 539.

Therefore, this Court finds that Plaintiff has failed to establish a *prima facie* case of discrimination.

## II.    RETALIATION

To establish a *prima facie* case of retaliation under Plaintiff must demonstrate that: (1) he

6

engaged in a protected activity; (2) his engagement in that protected activity was known to Defendant; (3) Defendant thereafter took an adverse employment action against him; and (4) a causal link between his engagement in the protected activity and the adverse employment action. *Nguyen*, 229 F.3d at 563.  In his Complaint, Plaintiff claims that he was retaliated against, following a complaint made to the EEO, when the RWCC program was terminated and he was reassigned from an established environment to a position in an environment that had to be set up.

The only evidence presented in the case demonstrates that Plaintiff applied for an opening back on the TAG team program and was selected by the promotion board to the position of E5 and assigned back on the TAG team.  Following Plaintiff's assignment back to the TAG team, Plaintiff's position with the RWCC was eliminated as Defendant lost its contract position on that project. Plaintiff's application to the position demonstrates that he did not find such action an adverse employment action.  *See Sundance Rehab. Corp.*, 466 F.3d at 501; *Policastro*, 297 F.3d at 539.

Therefore, this Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.

7